# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BIJU GEORGE,** | : | **CIVIL NO. 1:18-CV-766** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA TURNPIKE** | : | |
| **COMMISSION,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM AND ORDER

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On April 9, 2018, the plaintiff brought this workplace ethnic discrimination lawsuit against the Pennsylvania Turnpike Commission. The gist of this litigation involves allegations that the plaintiff, Biju George, was discriminated against and fired by his supervisor at the Turnpike Commission, Scott Fairholm, due to his ethnicity. One year after Georg's termination it seems that Fairholm, George's workplace antagonist, was also fired from his position at the Turnpike Commission.

For a number of months the parties have been embroiled in a series of discovery disputes, disputes which presumably should have drawn to a close on March 9, 2020  when the fact discovery deadline set by the district court elapsed. Sadly, this was not the case. Instead, discovery disputes continued to divide these parties even after the fact discovery deadline came to a close.

One of these recent discovery disputes relates a May 2020 request by the plaintiff to compel the deposition of Mark Compton, the CEO of the Turnpike Commission. Mr. Compton's deposition was not sought by the plaintiff during the first two years of this lawsuit, and the plaintiff did not seek to depose Mr. Compton prior to the expiration of the fact discovery deadline in this case, March 9, 2020. Instead, this discovery demand seemingly arose in May 2020, almost two months after the discovery deadline passed and two years after this lawsuit was filed. This request is now the subject of an informal letter motion to compel filed by the plaintiff. (Doc. 52).

For the reasons set forth below, this motion will be DENIED.

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> **(a) Motion for an Order Compelling Disclosure or Discovery**
> **(1) In General.** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged

> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court.   Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, will be disturbed only upon a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). Likewise, discovery sanction decisions rest in the sound discretion of the court. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009).

This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

The exercise of this discretion is guided by certain basic principles. At the outset, "where a party has submitted an untimely discovery request, the court can, and in the exercise of its discretion often should, refuse to compel compliance with that request. See, e.g., Maslanka v. Johnson & Johnson, 305 F.App'x 848 (3d Cir.2008) (affirming denial of *pro se* litigant motion to compel where discovery demands were untimely); Oriakhi v. United States, 165 F.App'x 991 (3d Cir.2006) (same); Bull v. United States, 143 F.App'x 468 (3d Cir.2005) (same)." Quarles v. Palakovich, No. 3:07-CV-1905, 2010 WL 3716199, at *2 (M.D. Pa. Sept. 16, 2010).

4

In addition, the "apex doctrine" cautions against lightly granting requests like the request made here to compel depositions of high ranking agency officials. "The 'apex doctrine' is an analytical framework used by courts in assessing whether to permit the depositions of individuals at the 'apex' of corporations and other entities. The doctrine recognizes that depositions of high-level officers severely burdens those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage." United States ex rel. Galmines v. Novartis Pharm. Corp., No. CV 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015).

> In deciding if the deposition of an individual at the 'apex' of a corporation or other entity is appropriate, district courts within the Third Circuit consider two factors: "1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods." In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig., No. 2:13-MD-2436, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014) (citations omitted).

Cartagena v. Serv. Source, Inc., No. 1:17-CV-742, 2019 WL 355728, at *4 (M.D. Pa. Jan. 29, 2019).

In this case, in the exercise of our discretion, we will DENY this request to conduct an apex deposition of Mr. Compton. At the outset, we deem the request to be untimely. This request was made years after this lawsuit began and months after the fact discovery deadline elapsed. Thus, as a mere chronological exercise, this request is tardy. The untimeliness of this request is further highlighted by the proffer

of relevance made by the plaintiff in support of this motion to depose Mr. Compton. According to the plaintiff, a deposition of Mr. Compton, the apex official at the Turnpike Commission, is justified here because Fairholm consulted with Mr. Compton before he terminated the plaintiff, and one year later Mr. Compton participated in the decision to fire Fairholm. However, it is clear from the deposition transcripts provided by the plaintiff that Mr. George and his counsel were aware of these facts in October and December of 2019, months before the discovery deadline passed. Therefore, the failure to raise this issue in a more timely manner cannot be explained or excused. In particular, we note that, on March 11, 2020, when we began addressing various other discovery disputes with the parties, we were asked by the plaintiff to permit the deposition of Ms. Norris, an HR specialist at the Commission, regarding Scott Fairholm's termination. Had the plaintiff also planned to seek Mr. Compton's deposition, this would have been the appropriate opportunity to make this request. The plaintiff did not do so, and this failure to act in a timely fashion now bars this belated discovery demand.

Moreover, beyond being untimely, in our view this apex official discovery deposition request fails on its merits. As we have noted such requests are disfavored and require a showing of two factors: 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level

employees or other discovery methods. <u>Cartagena v. Serv. Source, Inc.</u>, No. 1:17-CV-742, 2019 WL 355728, at *4 (M.D. Pa. Jan. 29, 2019). The instant request fails on both of these scores. First, while it appears that Mr. Compton had some familiarity with Fairholm's decision to fire George and participated in the decision one year later to fire Fairholm, it cannot be said that he possessed superior, or unique knowledge of these events. Indeed, as to the most relevant of these events, the decision to fire Biju George, Mr. Compton's knowledge would appear to be inferior to that of the actual decision-maker, Mr. Fairholm, or the Commission's HR staff, both of whom have been deposed. The fact that others possess knowledge of these events which would appear to be more detailed than Mr. Compton's, in turn, reveals that this information can and has been obtained in a less burdensome way, such as through lower-level employees or other discovery methods.

Accordingly, finding this request to be untimely and the showing made in support of the request to be inadequate to justify an apex official deposition, the plaintiff's motion to compel the deposition of Mr. Compton (Doc. 53) is DENIED.

So ordered this 27th day of May 2020.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge
